## HARDY *v.* WISE.

PLEADING AND PRACTICE; DEMURRER TO EVIDENCE; EXCEPTIONS.

1. A prayer to direct a verdict is similar to a demurrer to evidence, and is tested by the same rules.
2. A demurrer to evidence admits the truth of the evidence as given and all legal deductions from it in favor of the opposing party.
3. Where in the trial of an issue involving the testamentary capacity of a testator, the testimony of the caveators, if true, would justify a verdict in their favor, it is proper for the trial court to refuse to direct a verdict on that issue for the caveatees.

4. A ruling by a trial court overruling an objection that the cross-examination of a witness was extended to matters that should have been brought out in the direct examination, is not proper subject of exception.

No. 365. Submitted December 5, 1894. Decided January 7, 1895. .

HEARING on an appeal by the caveatees based on exceptions taken upon the trial of issues framed on the caveat of a will, and from an order of the Orphans' Court refusing probate of the will on the verdict found. *Affirmed.*

The FACTS are sufficiently stated in the opinion.

*Mr. Henry E. Davis* for the appellants.

*Mr. R. Ross Perry* and *Mr. Frank T. Browning* for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This is an appeal from the rulings of the court made in the course of the trial of certain issues framed on caveats to the will of Dr. Thomas W. Wise, deceased, and the order of court refusing probate to the will on the verdict found. The deceased died in this city on the 17th day of February, 1892, and the paper purporting to be his last will bears date the 15th of February, 1892, two days before his death. He was a widower, and left no descendants, but he left surviving him one brother and five sisters. He had made a previous will, dated July 30, 1891, in which he had made a different disposition of his property from that made by the last paper executed by him; and which former will has been admitted to probate since the trial of the issues framed on the caveats to the last paper.

The issues framed and sent to trial were three: 1st. Want of testamentary capacity of the decedent to make a valid will; 2d. Fraud, and 3d. Undue influence exercised by certain persons in obtaining the will.

Upon these issues the case was twice tried by jury, and on

each trial the same verdict was rendered. On each trial the jury, by their verdict, negatived the issues of fraud and undue influence but found for the caveators on the issue of want of testamentary capacity; and, of course, the paper, purporting to be the last will of the deceased, was refused probate.

The deceased was a physician by profession, and was an assistant surgeon in the Army of the United States, and was employed as an assistant librarian of the Army Medical Museum, in this city. He was about forty-five years of age, and his last illness was of short duration, and the five days immediately preceding his death form the period to which all the testimony relates reflecting upon the question of his testamentary capacity. The testimony makes it quite clear that the condition of the deceased, within those five days, grew constantly worse, both of body and mind ; and that, within the last three days of his life, his condition was that of languor and stupor, requiring active effort to arouse him to a knowledge of the presence of the members of his family and most intimate friends. His suffering was the result of a complication of diseases, and among other diseases afflicting him, according to professional evidence, was that of uremic poisoning of his system. It was in this condition of the decedent, that, after repeated efforts, he was aroused to execute the paper purporting to be his will, two days before his death ; the paper having been prepared the day previous to its execution.

There was a large mass of evidence presented, consisting largely of mere deathbed scenes and occurrences; and the record presented to this court, on the questions involved on the errors assigned, is unnecessarily enlarged by matter that should have been omitted. Upon the whole evidence the court instructed the jury that there was no sufficient evidence of fraud or undue influence, but refused to instruct, on the prayer of the caveatees, that there was no sufficient evidence on the issue of want of testamentary capacity to

justify the finding on that issue for the caveators. And the refusal of this instruction is the main question assigned for error on this appeal.

The prayer offered by the caveatees and refused by the court was in the nature of a demurrer to the evidence. Indeed, it is said that such prayer and instruction has superseded the ancient practice of demurrer to evidence, and that it answers the same purpose, and should be tested by the same rules. *Pleasants* v. *Fant*, 22 Wall. 116. That being so, it is a settled principle that the party who demurs to evidence, and thereby seeks to withdraw the consideration of the facts from the jury, is therefore bound to admit not only the truth of the evidence as given, but every fact which that evidence may legally conduce to prove in favor of the other party. And if, upon any view of the facts, the jury might have given a verdict against the party demurring, the court will likewise give judgment against him. *Thornton* v. *Bank of Washington*, 3 Pet. 36. And so in the case of *Pawling* v. *The United States*, 4 Cr. 219, quoted with approval by the court in *Pleasants* v. *Fant, supra*, Marshall, C. J., said : "The party demurring to evidence admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony. Forced and violent inferences he does not admit, but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw the court ought to draw."

Applying the principle thus stated, the court below was clearly right in refusing the instruction. The testimony was conflicting as to the testamentary capacity of the deceased at the time of executing the paper in question. But if we concede the truth of all the testimony on the part of the caveators, and all fair deductions therefrom, as we are bound to do, before the case could be withdrawn from the jury, there was a clear case on the issue of testamentary capacity, in favor of the caveators. It was exclusively the province of

the jury to pass upon the weight of evidence and to determine upon the conflict of testimony adduced by the adverse parties.

We shall not undertake to recapitulate in detail the facts and circumstances proved on the one side and the other of this case. It would serve no useful purpose whatever. Suffice it to say, that we have examined the testimony with care, and that we think there was ample evidence to justify the court in submitting the case to the jury, on the issue of the want of testamentary capacity. That, under the instruction of the court, was the only question left to the jury to pass upon; and two successive verdicts upon that question in the negative ought to be satisfactory, and sufficient to conclude the question. After these verdicts, the court would not be disposed to disturb such finding except for very obvious and cogent reason.

There were exceptions taken by the caveatees to certain instructions granted by the court at the instance of the caveators; but there has been no error assigned in respect to these instructions; and they are therefore not considered.

There was an exception taken by the caveatees to the admissibility of an opinion of the witness Apel, to the effect that he did not regard the decedent the day before his death, when, and under the conditions that the witness saw him, as capable of transacting business. The witness was well acquainted with the decedent; had known him for a good many years, and had served in office with him; and when he saw the decedent the day before his death, lying in bed, while he did not attempt to speak to him, he says he appeared to be in a stupor; and assuming him to be in that state, the witness thought he was not capable of transacting business. The whole matter was fully explained in the examination of the witness, and the opinion expressed, if it can be called an opinion, was shown to be of little or no importance, and could have made no serious impression upon the minds of the jury. Its admission forms no ground for reversal.

Nor is there any ground for reversal shown in the exception, and error assigned thereon, to the allowance of the examination of Dr. Gray by the caveators. The witness had been examined in chief by the caveatees, and the caveators, when they came to cross-examine the witness, extended that examination to matters that should strictly have been brought out by examination in chief, as part of the evidence of the caveators; and this was objected to as irregular by the caveatees. It was, however, allowed by the court, and the ruling formed no proper subject of exception. To allow the examination was within the discretion of the court, and it is not a subject of review. The mode of conducting trials, the order of introducing evidence, and the time when it may be introduced, are, properly, matters belonging to the practice of the trial court, with which an appellate court ought not to interfere, except where it is manifest that there has been surprise or prejudice to the opposite party. Trial courts should be and are invested with a large discretion on this subject; and we do not perceive that the discretion of the court below was abused in allowing the examination of the witness. There was nothing in his testimony that was not admissible as evidence. The case is fully within the principle laid down by the Supreme Court of the United States, in the leading case of the *Railroad Co.* v. *Stimpson*, 14 Pet. 448, 463.

The rulings and order of the court below must be affirmed; and it is so ordered.

*Rulings and order affirmed.*